**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ROSE CLARKSON, JUNE MACK, VALERIE HICKS, CARRIE DEVERS, THERESA CULVER, AMY CAPODICI, GEORGEANN ROBERTS, and PAMELA SILVER**, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**ONSITE MAMMOGRAPHY, LLC d/b/a ONSITE WOMEN'S HEALTH,**<br><br>Defendant. | Case No. 3:25-cv-11123-MGM<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## I. INTRODUCTION

This Court preliminarily approved the settlement in this class action on April 13, 2026. This case arises from an unauthorized access to an employee email account of Defendant Onsite Mammography, LLC d/b/a Onsite Women's Health ("Onsite" or "Defendant") discovered by Defendant in or around October 2024 (the "Incident"). The Incident potentially exposed the Private Information of approximately 357,265 Settlement Class Members.[1]

Through the efforts of Class Counsel, the Parties reached a settlement that provides significant benefits to the Settlement Class, including the establishment of a $2,525,000 non-reversionary Settlement Fund that will pay for: (1) reimbursement of documented out-of-pocket losses up to $5,000 per Class Member; (2) *pro rata* cash payments; and (3) three years of credit

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement. Citations to the Settlement Agreement will be abbreviated as "Agr. ¶ ___."

monitoring and identity-theft-protection services equivalent to CyEx Medical Shield Complete, which includes three-bureau monitoring and $1,000,000 in identity-theft insurance.

Throughout this Litigation, Class Counsel and other Plaintiffs' counsel have zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and arm's-length negotiations and full-day mediation. As compensation for the substantial benefits conferred upon the Settlement Class, Plaintiffs and Class Counsel now respectfully move for an award of attorneys' fees in the amount of $841,666.67 (one-third of the Settlement Fund), reimbursement of litigation expenses of $9,550.99, and service awards of $3,500 to each of the eight Named Plaintiffs ($28,000 total). As demonstrated below, this request is reasonable in light of the benefits achieved, the skill and experience of counsel, the complexity of the litigation, the risks assumed, the time and resources devoted, awards in comparable cases, and considerations of public policy.

## II. CASE SUMMARY

### A. The Incident

Defendant Onsite Mammography, LLC, doing business as Onsite Women's Health, partners with OB/GYN and primary-care practices to provide in-office breast-imaging services across the United States. In or around October 2024, Defendant discovered that an unauthorized third party gained access to one employee's email account. The compromised email account that may have contained Private Information of current and former patients, including names, addresses, Social Security numbers, dates of birth, medical and clinical treatment information, health-insurance information, and other sensitive data.

On April 21, 2025, Defendant sent notice of the Data Incident to approximately 357,265 individuals whose Private Information may have been impacted. Defendant denies all allegations of wrongdoing and liability.

**B. The Settlement Class**

The Settlement Class includes all individuals residing in the United States whose Private Information may have been compromised as a result of the Incident, with standard exclusions for Defendant and its officers and directors, the presiding judges, and individuals who timely and validly opt out.

**C. Settlement Consideration**

Defendant agreed to pay $2,525,000 into a non-reversionary Settlement Fund. The Fund pays for: (1) settlement-administration costs; (2) service awards to the Named Plaintiffs; (3) Court-approved attorneys' fees and expenses; and (4) benefits to Settlement Class Members. Class Members may claim reimbursement of documented out-of-pocket losses attributable to the Incident up to $5,000, *pro rata* cash payments from the Net Settlement Fund, and three years of comprehensive credit-monitoring and identity-protection services (such as CyEx Medical Shield Complete with three-bureau credit monitoring and $1,000,000 in identity-theft insurance).

**D. Releases**

The releases are appropriately tailored to claims arising from or related to the Incident and do not extend to unrelated claims against Defendant. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all Released Claims, including Unknown Claims, against Defendant and the other Released Parties. Agr. ¶¶ 2.34-2.36, 2.49, 13.1.

**E. Notice Program and Claims Process**

Eisner Advisory Group, LLC ("EisnerAmper") is the Court-appointed Settlement Administrator. The Notice Program includes direct mail notice to all Class Members identifiable through Defendant's records, a dedicated settlement website (www.OnsiteSettlement.com), and a toll-free telephone number. Class Members may submit claims online or by mail.

The Notice Program has been initiated and Plaintiffs' Motion for Final Approval will detail the Notice results to the Court. The Claims Process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim if needed, submit Claims, and decide whether to opt out or object. Settlement Class Members have up to 90 days from the Notice Deadline to submit a Claim Form for benefits. Agr. ¶ 2.7. The Claim Form is in plain language for easy completion. *See id.*, Ex. C. There is a robust process to review Claim Forms for completeness, validity, and to prevent fraud and abuse, giving claimants the opportunity to supplement their claims with additional information to cure any deficiencies and a process to resolve disputes over claim validity. *Id.* ¶ 6.2.1.

**F. Service Awards, Attorneys' Fees, and Costs**

Consistent with the Agreement and the Notices to the Settlement Class, Class Counsel seek an attorney's fees award of one-third of the Settlement Fund, plus reasonable litigation expenses. The Named Plaintiffs also seek service awards of $3,500 each, meant to compensate them for their efforts on the Settlement Class's behalf. The fee application is to be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

## III. ARGUMENT

**A. An Award of One-Third of the Settlement Fund Is Reasonable**

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in the First Circuit "recognize the advantages" of the percentage-of-fund method in common-fund cases. *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022); *see also In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995).

An award of one-third of the common fund is the benchmark in this Circuit. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014); *In re Cabletron Sys.*, 239 F.R.D. at 37. Indeed, courts in this District routinely award one-third of common fund recoveries in data-breach and consumer class actions. *See, e.g., Luna v. Carbonite, Inc.*, No. 1:19-cv-11662-LTS, 2024 WL 6470281 (D. Mass. May 15, 2024); *Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass. Mar. 23, 2020); *Meaden v. HarborOne Bank*, No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023); *In re Emmanuel Coll. Data Sec. Incident*, No. 1:24-CV019314-AK (D. Mass. July 29, 2025).

### B. Class Counsel's Expertise and Effort, the Risks of the Case, and the Achieved Result Support the Attorneys' Fee Request

The First Circuit has yet to establish a specific set of factors for district courts to consider when assessing applications for attorneys' fees in class actions. Instead, district courts have broad discretion to consider a wide variety of factors. Courts in this Circuit have been evaluating the reasonableness of a fee request by considering the following seven factors: (1) the size of the settlement fund and number of class members benefited; (2) the skill, expertise, and efficiency of counsel; (3) the complexity and duration of the litigation; (4) the litigation risks; (5) time and labor expended; (6) comparable awards in similar cases; and (7) public policy considerations. *In re Neurontin Mktg.*, 58 F. Supp. 3d at 170. Each factor supports the requested fee here.

### *1. Size of the Fund and Number of Settlement Class Members Benefited*

With any class action settlement, the results obtained for the settlement class is the most important factor. *Hensley v. Eckerhart,* 461 U.S. 422, 436 ("the most critical factor is the degree of success obtained"). As described *supra*, the Settlement provides substantial Settlement Class relief for 357,265 individuals. Defendant has agreed to establish a $2.5 million Settlement Fund, which will be used to provide a variety of Settlement Class benefits: (1) reimbursement of documented out-of-pocket losses up to $5,000 per Class Member; (2) a *pro rata* cash payment from the remaining balance of the Settlement Fund; and (3) three years of credit monitoring and medical identity monitoring services equivalent to CyEx Medical Shield Complete, which includes three credit bureau monitoring services and $1,000,000 in identity theft insurance coverage. These benefits are comparable to, and in some cases superior to, those provided by other data breach settlements finally approved in this judicial district. *See, e.g., In re Emmanuel College Data Sec. Incident,* No. 1:24-CV019314-AK, ECF No. 42 (D. Mass. July 8, 2025) (finally approved settlement offering reimbursement for documented out-of-pocket losses up to $5,000 incurred as a result of the Incident; (2) a *pro rata* cash payment of up to $350; and (3) the opportunity to claim two years of credit monitoring and identity-theft insurance protections.)*; Webb v. Injured Workers Pharmacy*, LLC, Case No. 1:22-cv-10797-RGS, ECF No. 60 (D. Mass. Jan. 2, 2025) (finally approved settlement with (1) up to $5,000 in compensation for economic losses; (2) *pro rata* cash payments; and (3) two years of credit monitoring).

The $2,525,000 non-reversionary Settlement Fund provides an approximate per-member value of $7.07 before accounting for the additional value of three years of credit-monitoring services. This result compares favorably to recoveries in similar data-breach class actions in this District. *See, e.g.*, *Webb, supra* (approving settlement relief equating to $8.11 per class member);

*Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (approving requested one-third fee award with settlement relief equating to $3.29 per class member); *In re Sovos Compliance*, 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (approving requested one-third fee award with settlement relief equating to $7.14 per class member). This outcome can only be described as a success, and entirely consistent with outcomes in other data breach settlements. Thus, the fact that Class Counsel was able to achieve such an outcome weighs heavily in favor of approving the requested award.

***2. Settlement Class Counsel's Skill, Expertise, and Efficiency***

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348. The skill required to litigate data breach cases is great, in part due to the quickly evolving nature of data breach and privacy law. *See Fox v. Iowa Health Sys.*, No.: 3:18-cv-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").

Class Counsel—Elena Belov of the Almeida Law Group, Marc Edelson of Edelson Lechtzin LLP, and Jonathan Mann of Pittman Dutton Hellums Bradley & Mann—bring decades of collective experience prosecuting data-breach and privacy class actions nationwide. This Court has already recognized their qualifications by appointing them as Interim Co-Lead Counsel. Liaison Counsel John Roddy of Bailey & Glasser LLP likewise possesses significant experience in complex class litigation. Class Counsel have an established track record and experience in litigating data breach claims. The significant experience and qualifications of counsel easily support the requested fee.

When looking at the quality of Class Counsel's representation, courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). As of June 29, 2026, there have been no objections to the Settlement. *See* Declaration of Marc H. Edelson ("Edelson Decl.") ¶ 24, attached hereto as Exhibit A. With only 13 exclusion requests and no objections to date, the reaction of the Settlement Class thus far strongly suggests their support for the Settlement and the proposed attorneys' fee award.

***3. Complexity and Duration of the Litigation***

Even though Class Counsel is confident Plaintiffs would prevail at trial, they anticipated facing several challenges in prosecuting this Litigation, which factored into negotiating the valuable Settlement. Edelson Decl. ¶ 25. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles even just to make it past the pleading stage. Data breach actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); K*oenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty

of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (granting preliminary approval, recognizing "Plaintiffs have a weaker case with respect to damages . . . and the number of Class Members who appear to have suffered actual identity theft or out-of-pocket damages that can reasonably be attributed to the Data Breach appears to be relatively low."). Thus, absent this Settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97.

If the case did not settle, the Parties would likely engage in extensive pre-trial motion practice followed by complex and technical discovery, utilizing experts, which depletes resources from both Parties, as well as this Court. Edelson Decl. ¶ 25. The Litigation's complexity is not diminished by Class Counsel's ability to achieve a prompt and efficient settlement. By reaching this favorable Settlement before dispositive motions or trial, Plaintiffs and Settlement Class Members avoid significant expense and delay, and instead ensure a fair recovery. *See Herb v. Homesite Grp. Inc.,* No. 1:22-CV-11416-JEK, 2024 WL 3593918, at *3 (D. Mass. July 31, 2024) ("the settlement avoids the costs, risks, uncertainties, and delays associated with continued litigation").

Plaintiffs asserted claims for negligence, breach of implied contract, breach of fiduciary duty, invasion of privacy, unjust enrichment, and declaratory judgment—each presenting novel legal issues regarding duty, causation, and damages in the data-breach context. Accordingly, the

novelty and complex nature of data breach class action cases support the requested attorneys' fee award to reasonably compensate Class Counsel.

***4. The Litigation Risks Support the Requested Attorneys' Fee Award***

The uncertain nature of contingent attorneys' fees requires counsel to assume more risk than in cases where compensation is based on billable hours. The risk in prosecuting a data breach class action is an important consideration in determining an appropriate attorneys' fee award and recognizes that contingent fee cases entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *See In re Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk assumed by an attorney is perhaps the foremost' factor in determining an appropriate fee award."); *George v. Acad. Mortg. Corp*., 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("a contingency fee arrangement often justifies an increase in the award of attorney's fees").

Class Counsel and other Plaintiffs' counsel undertook this Litigation on a purely contingent basis, with no assurance of recovery of costs or compensation for their time, assuming significant risk of nonpayment or underpayment. Edelson Decl. ¶ 30. Further, the attorneys involved forewent the ability to devote time to other cases and advanced their own funds to prosecute the Litigation, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id.* Despite that risk, they remained steadfast and represented Plaintiffs and the Settlement Class on contingency. The investment of substantial time, effort, and resources into this risky and uncertain Litigation with no guarantee or promise of return on their investment warrants an appropriate fee.

Here, while Plaintiffs believed they could prevail on their claims, they were also aware they face several strong legal defenses and difficulties in demonstrating causation and injury. *Id.* ¶ 30. Such defenses, if successful, could drastically decrease or eliminate any recovery. Plaintiffs would also need to prevail on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or *Daubert* motions on damages methodologies, among other motions. *Id.* ¶ 25. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. *Id.*

The general litigation risks are heightened in the data breach arena. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See, e.g.*, *Gordon*, 2019 WL 6972701, at *1 ("Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law.").

Thus, data breach cases like this one generally face substantial class certification hurdles. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification for lack of predominance); *In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389 (D. Mass. 2007) (denying class certification). Maintaining class certification is often an equally challenging hurdle. *See e.g.*, *Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes).

The path to a class-wide monetary judgment remains unpaved, particularly as to damages. *See, e.g., S. Indep. Bank v. Fred's, Inc., N*o. 2:15-CV-799-WKW, 2019 WL 1179396, at *21 (M.D.

Ala. Mar. 13, 2019) (class certification denied where individualized damages questions work against predominance). Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in disputed class certification settings and unproven in front of a jury. Edelson Decl. ¶ 25; *Hashemi v. Bosley, Inc*., 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in data breach class actions damages methodologies are largely untested and have yet to be presented to a jury).

This case was prosecuted on a wholly contingent basis and Class Counsel faced a real risk of non-payment. Defendant vigorously denied liability and causation, argued that no actual misuse of data occurred, and would have raised formidable defenses to class certification including individual issues of injury and damages. The risk of zero recovery was substantial. Class Counsel took on these risks knowing full well their efforts may not bear fruit. Their willingness to take on this Litigation in the face of such risk deserves to be rewarded.

***5. Class Counsel Devoted Extensive Time and Resources***

Class Counsel and additional Plaintiffs' Counsel devoted significant time and resources to this litigation, including: investigating claims and potential defendants; drafting individual and consolidated complaints; filing an Amended Consolidated Class Action Complaint; conducting informal discovery; preparing for and attending a full-day mediation session with the Honorable David E. Jones (Ret.); engaging in extensive settlement negotiations; drafting the Settlement Agreement and all supporting papers; obtaining preliminary approval; and coordinating with EisnerAmper to implement the Notice Program. Edelson Decl. ¶ 23. Though the Court need not perform a lodestar analysis even as a crosscheck,[2] Class Counsel offer the combined lodestar for

[2] Although not required, courts within the First Circuit have utilized the "lodestar calculation as a pragmatic cross-check" for percentage-based fee awards. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009); *In re Thirteen Appeals*, 56 F.3d at 307. As a cross-check, "the lodestar analysis is not undertaken to calculate a specific fee, but only to provide a

Class Counsel and additional Plaintiffs' counsel here as $678,241.02, reflecting 714.81 hours of combined attorney and paralegal time invested in the Litigation thus far. Edelson Decl. ¶ 36.[3] This time includes investigating and drafting the initial complaints in the related actions; consolidating the actions; drafting the motion to appoint interim class counsel; drafting the consolidated amended complaint; drafting and conducting informal discovery; drafting a detailed mediation statement; preparing for and attending mediation; negotiating a complex Settlement Agreement, including the Notices and Claim Form; successfully moving for preliminary approval; and working in concert with the Claims Administrator to implement and monitor the Notice Program and Claims Process. *Id.*

Currently, if approved by the Court, the one-third of the Settlement Fund requested results in a multiplier of approximately 1.24. *Id.* ¶ 39. In this judicial district, lodestar multipliers allowed by the court are generally between one and 2.7, but much higher multipliers have also been approved. *Ranbaxy,* 630 F. Supp. 3d at 246 ("[t]he typical range of the lodestar multiplier allowed by this Court is between one and 2.7."); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D.Mass. 1998) (approving attorneys' fees that would constitute a lodestar multiplier of 8.9); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. CIV.A. 05-11148PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving 8.3 lodestar multiplier). Therefore, the lodestar cross-check confirms the reasonableness of Class Counsel's request. Moreover,

---

broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010). "The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts need not review actual billing records and are free to rely on time summaries submitted by attorneys." *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 365 F. Supp. 3d 685, 701 (S.D.W. Va. 2019).

[3] For a lodestar cross check, the court multiplies the number of hours reasonably spent by a reasonable hourly rate. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005). "Reasonable fees are to be calculated according to the prevailing market rates in the relevant community." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020).

additional time will be spent going forward preparing the Motion for Final Approval, preparing for and appearing at the Final Approval Hearing, overseeing the final weeks of the Notice Program and Claims Process, and handling all post-Settlement approval issues. Edelson Decl. ¶ 39. Given prior experience, Class Counsel estimate an additional twenty-five to fifty hours will be invested. *Id.* Factoring in that additional time further decreases the multiplier.

The hourly rates charged are well within the acceptable range for class action litigators in general and are in line with or less than hourly rates approved in other complex data breach class action litigation and in this District. *Id.* ¶ 38; *see, e.g.*, *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (finding hourly rates for attorneys nationally have increased since 2020; approving $1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks). Ultimately, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find the lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

***6. The Fee Request Is Comparable to Awards in Similar Cases***

Awards of one-third of the common fund are routine in data-breach class actions. *See, e.g.*, *Ford*, 2023 WL 3679031, at *2 (awarding one-third); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. 2025) (awarding one-third in a data breach action); *Webb v. Injured Workers Pharmacy*, No. 1:22-cv-10797-RGS (D. Mass. 2025) (same); *In re Sovos Compliance*,

No. 1:23-cv-12100 (D. Mass. 2024) (same); *Kondo, et al. v. Creative Servs., Inc.*, No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same).

***7. Public Policy Considerations Support the Requested Attorneys' Fee***

Public policy strongly supports the fee request. "[T]he public interest in the vindication of rights through private enforcement of the law provides additional support for fee awards in class actions." *In re Lupron Mktg. & Sales Pracs. Litig.*, No. 01-cv-10861, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005). Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the general public." *In re Neurontin Mktg.*, 58 F. Supp. 3d at 171. Class actions such as this Litigation are vital to motivate entities that handle sensitive information, such as Defendant, to improve their security practices and *prevent* data breaches, an epidemic in recent years. Data breaches continue to increase in frequency and scope. For example, the Identity Theft Resource Center reported 3,158 total data breaches in 2024, including five "mega-breaches" involving at least 100 million individuals, with an astonishing 1,350,835,988 total data breach notices sent out.[4] This is just 47 breaches short of 2023's record-breaking 3,205 events involving 353,027,892 victims.[5] Furthermore, both 2024 and 2025 doubled the number of compromises in 2022, which had 1,802 total compromises involving 422,143,312 victims.[6] The actual ramifications from these data breaches have been just as severe, with one in four data breach victims eventually becoming victims of identity theft. Demonstrating this fact, in

---

[4] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf

[5] *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[6] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

2023, the Federal Trade Commission received over 1 million identity theft complaints and 2.6 million related fraud complaints, resulting in total losses exceeding $10 billion.[7]

These data breaches show no sign of slowing and one-in-four of the 1,350,835,988 instances in 2024 in which information was compromised will eventually metastasize as a costly identity theft incident for an unfortunate citizen. The class settlement reimbursements handlers of private information are required to pay to victims necessarily incentive them to harden, strengthen, and otherwise improve their systems against the ever-rising tide.

For the vast majority of affected individuals, class actions are the only practical mechanism to hold companies accountable, obtain compensation, and vindicate their right to safeguard and protect their private information. Given the relatively small and difficult-to-quantify amounts of individual damages, pursuing individual claims would have been economically and judicially inefficient. Without class actions, victims would simply see no recovery. *See Mazola v. May Dep't Stores Co.*, No. 97-CV-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]").

Adequate fee awards are essential to incentivize qualified counsel to undertake these risky, resource-intensive cases. For all the above reasons, the Court should find the requested attorneys' fees reasonable.

**C. The Request for Reimbursement of Costs and Expenses Is Reasonable**

---

[7] Jim Akin, *U.S. Fraud and Identity Theft Losses Topped $10 Billion in 2023*, Experian (July 25, 2024), https://www.experian.com/blogs/ask-experian/identity-theft-statistics.

Class Counsel seek reimbursement of litigation expenses of $9,550.99. "Counsel who create a common fund are entitled to the reimbursement of litigation expenses from the fund." *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011). Due to the early stage of litigation at which Plaintiffs were able to reach settlement, the litigation costs are relatively low. Edelson Decl. at ¶ 41.

The expenses incurred include court filing fees, pro hac vice admission fees, mediation fees, and other costs directly related to the prosecution of this action. These are the types of costs routinely reimbursed in class action litigation. *See Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving expenses for mediation, travel, filing fees, and postage); *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990-ER, 2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving expenses for document management, expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery).

**D. The Requested Service Awards for the Class Representatives Are Reasonable**

Plaintiffs request service awards of $3,500 for each of the eight Named Plaintiffs ($28,000 total). The Service Awards compensate them for their efforts on behalf of the Settlement Class, including maintaining regular contact with counsel, assisting in the investigation of the Litigation by producing relevant documents and participating in interviews, reviewing the pleadings, being prepared to assist with discovery, remaining available for consultation throughout settlement negotiations, answering counsel's many questions, and reviewing the Settlement Agreement. Edelson Decl. ¶ 42.

Service awards are routinely granted to compensate class representatives for their time and effort in pursuing claims on behalf of the class. *See Bezdek*, 79 F. Supp. 3d at 352 (approving service awards of $2,500 for each representative plaintiff); *In re Emmanuel Coll. Data Sec.*

*Incident*, No. 1:24-CV019314-AK (D. Mass. July 29, 2025) (approving $2,500 service awards); *Sassoon v. Postmates, Inc.*, No. 17-11397-JCB, 2020 WL 8092224 (D. Mass. 2020) (same); *Bazerman v. Am. Airlines, Inc.*, No. 1:17-CV-11297-WGY, 2019 WL 13217437 (D. Mass. 2019) (same). The modest $3,500 awards requested here are well within the range approved by courts in this District.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs and Class Counsel respectfully request that the Court award attorneys' fees in the amount of $841,666.67 (one-third of the Settlement Fund), reimburse litigation expenses of $9,550.99, and approve service awards of $3,500 to each of the Named Plaintiffs.

Dated: June 29, 2026

Respectfully submitted,

*/s/ John Roddy*
John Roddy (BBO # 424240)
**BAILEY & GLASSER LLP**
101 Arch Street, 8th Floor
Boston, MA 02110
Tel: (617) 439-6730
Fax: (617) 951-3954
jroddy@baileyglasser.com

*Interim Liaison Counsel for Plaintiffs*

Elena A. Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (917) 716-7132
elena@almeidalawgroup.com

Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
Tel: (215) 867-2399
medelson@edelson-law.com

Jonathan S. Mann*
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
jonm@pittmandutton.com

*Interim Co-Lead Counsel for Plaintiffs*

**Pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ John Roddy*
*Interim Liaison Counsel*